NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARTIN E. TAYLOR,**

        **Plaintiff,**

v.                                              **Case No. 6:15-CV-168-Orl-41KRS**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the Complaint filed by Plaintiff Martin E. Taylor seeking review of the final decision of the Commissioner of Social Security denying his claim for social security benefits, Doc. No. 1, the answer and certified copy of the record before the Social Security Administration ("SSA"), Doc. Nos. 13, 15, and the parties' Joint Memorandum, Doc. No. 17.[1]

---

[1] In the Scheduling Order, I required counsel for the parties to submit a single, Joint Memorandum with an agreed statement of the pertinent facts in the record. Doc. No. 16. I note that counsel did not include all of the facts relied upon in the Statement of Facts, and included additional facts in the analysis, which facts I have considered. Counsel for Plaintiff was ordered to identify and frame, in a neutral fashion, each of the disputed issues raised as grounds for reversal and/or remand, and counsel for the Commissioner was required to respond to each of those issues in the format set forth in the Scheduling Order. *Id.* at 4.

NOT FOR PUBLICATION

## PROCEDURAL HISTORY.

In 2013, Taylor filed an application for benefits under the Federal Old Age, Survivors and Disability Insurance Programs ("OASDI"), 42 U.S.C. § 401, *et seq.* He alleged that he became disabled on August 2, 2013. R. 148.

After his application was denied originally and on reconsideration, Taylor asked for a hearing before an Administrative Law Judge ("ALJ"). R. 98. An ALJ held a hearing on August 11, 2014. Taylor, accompanied by an attorney, and a vocational expert ("VE") testified at the hearing. R. 26-59.

After considering the hearing testimony and the evidence in the record, the ALJ issued a decision on October 1, 2014. R. 8-20. The ALJ found that Taylor was insured under OASDI through December 31, 2018. The ALJ concluded that Taylor had not engaged in substantial gainful activity since the alleged disability onset date. R. 10.

The ALJ found that Taylor had lumbar and cervical degenerative disc disease and emphysema versus chronic obstructive pulmonary disease (COPD), which were severe impairments. *Id.* The ALJ found no support in the medical evidence of record for Taylor's claims of impairments arising from fibromyalgia or migraines, and therefore concluded that these impairments were not severe. *Id.* The ALJ also found that Taylor did not have an impairment or combination of impairments that met or equaled an impairment listed in SSA regulations. R. 11.

The ALJ concluded that Taylor had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> The claimant may require a stool to sit at the workstation up to 4 hours in an 8-hour workday; no more than occasional stooping, kneeling, crouching, crawling, and climbing but never ladders/ropes/scaffolds. He should avoid: constant pushing/pulling over 10 pounds with the upper extremities; overhead reaching; overhead lifting; concentrated exposure to temperature extremes; concentrated exposure to dusts, fumes, gases, and other pulmonary irritants; work with dangerous machinery/tools, work at heights, and constant contact with vibration. His tasks should be simple 1-5 steps learned after 30 days' training, performed independently at his own workstation, with no more than occasional interaction with coworkers/supervisors, but none with the general public.

R. 11. In reaching this conclusion, the ALJ acknowledged that Taylor had a 30% disability rating from the Department of Veterans Affairs ("VA"), but the ALJ did not state the weight given to that rating. R. 13. The ALJ also summarized the findings on examination by Sujatha P. Vuyyuru, M.D., a treating rheumatologist, but the ALJ did not state the weight given to Dr. Vuyyuru's opinion. R. 18.

The ALJ determined that Taylor could not perform his past relevant work as a transportation equipment painter and as a painter because those jobs required a medium level of exertion and were semiskilled jobs. R. 18. Based on the testimony of the VE, the ALJ concluded that Taylor could perform light, unskilled work available in the national economy, specifically garment bagger and mail clerk sorter. R. 19. Therefore, the ALJ concluded that Taylor was not disabled. *Id.*

Taylor requested review of the ALJ's decision by the Appeals Council. R. 4. On December 2, 2014, the Appeals Council found no reason to change the ALJ's decision. R. 1.

Taylor now seeks review of the final decision of the Commissioner by this Court.

NOT FOR PUBLICATION

## JURISDICTION AND STANDARD OF REVIEW.

Taylor having exhausted his administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g). A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

## SUMMARY OF THE FACTS.

After a thorough review of the record, I find that the facts are generally adequately stated in the Joint Memorandum and the ALJ's decision, which statement of facts I incorporate by reference. Because Taylor challenges only the ALJ's treatment of the VA disability rating and the weight given to Dr. Vuyyuru's opinions, I will only summarize facts pertinent to the issues raised to protect Taylor's privacy to the extent possible.

Taylor was born in 1961. R. 29. He graduated from high school. R. 189.

At the ALJ's hearing, Taylor complained of neck pain and constant back pain. R. 32-33, 35. He estimated his pain was at a level of 6 to 7 on a 10-point pain scale even after taking medication. R. 33-35. He also had problems from fibromyalgia in his neck, shoulder blades, back, down his right arm, in his fingertips, and down his left leg; numbness in his feet; and muscle cramps. R. 34. He also had problems breathing, and he was depressed and anxious. R. 36, 40-41.

Taylor suffered a traumatic brain injury in the Air Force when he fell 32 feet. He suffered from migraine headaches which had increased by the time of the hearing to 2 or 3 a week

each lasting 2 to 3 hours.  R. 38-39.  Medication for the migraines made him nauseous and groggy.  R. 40.

During a normal day, Taylor performed stretching exercises.  He performed light cleaning, including dusting, sweeping and he folded laundry.  He had to be careful with lifting and bending.  R. 42-43.  He took a break about every 15 minutes.  R. 43.  He sometimes went to the store or helped a friend out in his body shop such as cleaning car windows.  R. 42-43, 52.

Taylor estimated that he could walk only about a block due to back pain and shortness of breath.  He could walk again after about 15 minutes of rest.  He began using a cane about 2 weeks before the ALJ's hearing to take pressure off a pinched nerve on his left side.  R. 45-46.  He estimated that he could stand for 10 minutes with his cane and 5 minutes without his cane due to radiating lower back pain and cramps.  R. 46.  He could stand again after sitting for 15 minutes.  R. 46-47.  He could sit for about 15 minutes before experiencing muscle cramps.  His most comfortable position was lying down.  *Id.*  He estimated that he could lift and carry 20 to 30 pounds, but that he could not lift the weight from the floor.  R. 48-49.  He estimated that he could lift 10 to 20 pounds on a more regular basis.  R. 49-50.

Taylor could care for his personal hygiene, but he needed assistance getting in and out of the bathtub.  R. 51.  He could use a microwave.  R. 52.  He could drive.  He liked to watch television and fish off a dock with a cane pole.  He read a little.  *Id.*

On October 10, 2012, Katia Gugucheva, M.D., who worked at the VA, examined Taylor for complaints of worsening migraine headaches lasting hours or longer with nausea, dizziness and blurred vision.  R. 379.  Dr. Gugucheva opined that Taylor's migraine headaches would not

interfere with his ability to perform gainful employment.  R. 382.  She directed Taylor to discuss treatment for his headaches with his primary care physician.  *Id.*

In November 2013, Taylor reported that he continued to have migraine headaches. R. 545, 563.  Vincent Alfrieri, M.D., Taylor's primary care physician, noted on November 15, 2013, that the migraine headaches were "stable for now" on medication.  R. 545.  However, in December 2013, Dr. Alfieri discontinued the medication used to treat Taylor's migraine headaches, Sumatriptan, due to a serious interaction with other medication he was taking.  R. 532.  On December 13, 2013, Taylor reported experiencing an increase in migraine headaches. R. 533.  The VA records reflect that at least by November 2013, the VA determined that Taylor had a 30% service-connected disability due to migraine headaches.  R. 546.

On June 6, 2014, Taylor sought emergency department treatment for a migraine, mild in severity, that had lasted two days.  The pain was not relieved by over-the-counter pain medication.  R. 1089.  After treatment with medication, his condition improved and he was discharged.  R. 1090.  On July 1, 2014, Taylor reported that he had six headaches, two of which were severe, in June.  The headaches were associated with nausea and vomiting.  Light and loud noise made his headaches worse.  R. 1080.  He was taking Ibuprofen and methocarbamol.[2]  *Id.* After examination, the treatment provider opined that Taylor had a tension headache.  R. 1085.

On May 15, 2014, Dr. Vuyyuru, a rheumatologist[3], examined Taylor at the VA because testing had shown that he had a positive rheumatoid factor.  After examination, Dr. Vuyyuru

---

[2] Methocarbamol is the generic form of Robaxin.  It is a drug used to treat migraine and headache pain.  WebMD, *Drugs for Migraines and Headache Pain*, http://www.webmd.com/migraines-headaches/pain-relief-headaches (last visited April 28, 2016).

[3] Dr. Vuyyuru is board certified in rheumatology and internal medicine.  Am. Bd. of Medical Specialties, *Is Your Doctor Board Certified?*, https://www.certificationmatters.org/is-your-doctor-board-certified/search-now.aspx

opined that the rheumatoid factor was most likely a false positive.  R. 658.  On June 23, 2014, Dr. Vuyyuru again examined Taylor for his complaints of chronic neck and low back pain and parethesias in his lower extremities and right upper extremity.  R. 877.  Upon examination, Dr. Vuyyuru observed a severe paraspinal muscle spasm in the cervical spine and significant paraspinal spasms in the lumbosacral spine.  R. 878.  Dr. Vuyyuru also noted 16 of 18 tender points throughout.  R. 879.  Dr. Vuyyuru opined that Taylor met the criteria for fibromyalgia with diffuse musculoskeletal pain and multiple tender points.  She opined that the fibromyalgia was probably secondary to his chronic neck and low back pain.  R. 879-80.  Dr. Vuyyuru noted that Lyrica would help with neuropathic pain and fibromyalgia.  She advised Taylor to swim, exercise and do stretching exercises.  R. 880.

During the hearing, the ALJ asked the VE to assume a hypothetical person of Taylor's education and work experience who could perform light work with the following limitations:

> The individual may require a stool at the workstation, such that sitting could be one to two times an hour, up to about five minutes each time.  There should be no more than occasional postural movement, such as stooping, kneeling, crouching, crawling, and climbing.  But the individual is never to climb ladders, ropes or scaffolds.
>
> The individual should avoid the following:  constant pushing and pulling with the upper extremities, over ten pounds; overhead reaching - - and that includes overhead lifting; further, avoid concentrated exposure to temperature extremes; concentrated exposure to dusts, fumes, gases, and other pulmonary irritants; work with dangerous machinery and tools; work at heights; and constant direct contact with vibration.
>
> Finally, the tasks to be performed should be simple one to five steps, that can be learned with 30 days of training.  The tasks should be performed independently, at an independent workstation.  There should be no more than occasional interaction with co-workers and supervisors, but none with the general public.

---

(search by name Vuyyuru, Sujatha).

7

> [The] individual was required to sit up to four hours at the workstation throughout the day, and the sitting was performed intermittently, but again, totaled four hours - - up to four hours in a workday[.]

R. 55-57.  The VE testified that this hypothetical person could perform the jobs of garment bagger and mail clerk or mail sorter.  R. 56-57.

### ANALYSIS.

In the Joint Memorandum, which I have reviewed, Taylor raises only two assignments of error.  He argues that the ALJ erred by failing to state the weight given to Dr. Vuyyuru's opinions.  He also contends that the ALJ erred by not properly considering the VA's disability rating based on his migraine headaches.  I will address these assignments of error in turn.

*Weight Given to Dr. Vuyuuru's Opinions.*

Dr. Vuyyuru examined Taylor twice and, therefore, likely qualifies as a treating physician. *See Gainous v. Astrue*, 402 F. App'x 472, 474 n. 2 (11th Cir. 2010).[4]  The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).  However, even if Dr. Vuyyuru is not considered to be a treating physician, the ALJ was required to state the weight she gave to Dr. Vuyyuru's opinion.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

The ALJ discussed Dr. Vuyyuru's findings on examination, but she did not state the weight given to Dr. Vuyyuru's opinions.  Counsel for the Commissioner argues that Dr. Vuyyuru did not state an opinion and contends that the law does not require the ALJ "to assign weight to

---

[4] Unpublished decision of the Eleventh Circuit are cited herein as persuasive authority.

NOT FOR PUBLICATION

statements of clinical findings, diagnoses, and potential treatment, which is all that [Dr. Vuyyuru's] reports contained." Doc. No. 17, at 24. The Commissioner's argument is incorrect as a matter of law. In *Winschel*, the Eleventh Circuit stated that a treatment note that contains a record of the patient's symptoms, a diagnosis, and a judgment about the severity of the impairments is an opinion with respect to which the ALJ must state the weight assigned. 631 F.3d at 1179. In her treatment notes, Dr. Vuyyuru described Taylor's symptoms, provided a diagnosis of fibromyalgia, and provided a judgment regarding the severity of that condition, noting that Lyrica would help with neuropathic pain and fibromyalgia and that Taylor should swim, exercise and do stretching exercises, which are exertional activities. Thus, Dr. Vuyyuru expressed an opinion as defined in *Winschel*, and the ALJ was required to state the weight given to that opinion. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

For these reasons, I recommend that the Court find that this assignment of error is meritorious.

*VA Disability Rating*.

As discussed above, by November 2013, the VA determined that Taylor had a 30% service-connected disability due to migraine headaches. Taylor contends that the ALJ erred by failing to give great weight to that disability assessment. Binding law in this circuit states that a VA disability rating is entitled to great weight. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984). However, the Eleventh Circuit has affirmed final decisions of the Commissioner when the record showed that the ALJ implicitly stated the weight given to a VA disability

NOT FOR PUBLICATION

determination. *See, e.g., Adams v. Comm'r of Soc. Sec.*, 542 F. App'x 854, 856 (11th Cir. 2013); *Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009).

In this case, while it appears clear that the ALJ did not give great weight to the VA's disability determination, it is not clear why the ALJ did not do so. First, while the ALJ noted that Taylor had a 30% disability rating from the VA, R. 13, there is no indication in the decision that the ALJ was aware that this disability rating was based on Taylor's migraine headaches. The ALJ also relied on evidence that Taylor's migraine headaches were stable with use of Sumatriptan, R. 14, but she did not acknowledge that Dr. Alfieri discontinued this medication in December 2013 due to serious interaction with other medication. After this medication was discontinued, Taylor reported experiencing an increase in migraine headaches. In June 2014, he sought emergency department treatment for a migraine headache, albeit mild in severity, that lasted two days and that was not relieved by over-the-counter medication. On July 1, 2014, Taylor reported that he had had six headaches, two of which were severe, in June. The headaches were associated with nausea and vomiting, even though he was taking methocarbamol, a different medication used for the treatment of migraine and headache pain.

In the Joint Memorandum, counsel for the Commissioner makes an effort to provide an explanation for the ALJ's decision not to give great weight to the VA's disability determination. Doc. No. 17, at 17-18. The law does not permit such an after-the-fact assessment to provide the finding that the ALJ was required to make. The Eleventh Circuit declines "to affirm simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir.1984).

Therefore, I recommend that the Court find that the second assignment of error is also well taken.

## RECOMMENDATION.

For the reasons stated above, I **RESPECTFULLY RECOMMEND** that the final decision of the Commissioner be **REVERSED** pursuant to sentence four of § 406(g) and that the case be **REMANDED** to the Commissioner for further proceedings. I further **RECOMMEND** that the Court direct the Clerk of Court to issue a judgment consistent with its decision on this Report and Recommendation and, thereafter, to close the file.

## NOTICE.

Failure to file written objections to the proposed findings and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its filing shall bar an aggrieved party from challenging on appeal the district court's order based on unobjected-to factual and legal conclusions.

**Respectfully Recommended** this 10th day of May 2016.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE